## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK GRIFFIN,

*Plaintiff*,

v.

PAMELA SMITH, *et al.*,

*Defendants*.

Civil Action No. 1:24-cv-00036-BAH

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DISTRICT OF COLUMBIA AND PAMELA SMITH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT ON COUNTS V–X

## INTRODUCTION

Plaintiff Mark Griffin asserts that the January 6, 2021 insurrection was a peaceful protest. According to him, members of the Metropolitan Police Department (MPD)—who were tasked with defending the United States Capitol and its occupants—used excessive force against him when they pepper sprayed him, pushed the crowd back with bicycle barricades, and struck him with a crowd control projectile in the leg.  In Counts I–IV, Plaintiff brings claims under 42 U.S.C. § 1983 Defendants District of Columbia (the District), Pamela Smith (Chief Smith), and five John Doe officers for violating his First, Fourth, Fifth, and Fourteenth Amendment rights. Chief Smith moves to under Fed. R. Civ. P. 12(b)(6) to dismiss the claims against her because she was not the Chief of Police for MPD on January 6, 2021, and there is no allegation that she had any personal involvement in Plaintiff's injuries.  The District also moves under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's § 1983 claims because Plaintiff's allegation that MPD officers "seemed to be trigger-happy and not trained to deal with crowd control" is inadequate to state a

claim of municipal deliberate indifference.  Further, Plaintiff's Fifth and Fourteenth Amendment claims fail to make out a predicate constitutional violation.

Plaintiff also brings six common law claims in Counts V–X for battery, "excessive force," assault, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress against the District and the John Doe officers.  The District moves for judgment on these claims under Fed. R. Civ. P. 56 because Plaintiff failed to provide the mandatory pre-suit notice required by D.C. Code § 12–309.  Plaintiff's common law claims also fail under Fed. R. Civ. P. 12(b)(6) because his intentional tort claims were filed after the one-year statute of limitations, and Plaintiff's false imprisonment and negligent infliction of emotional distress claims otherwise fail to state a claim.

## BACKGROUND

Plaintiff Mark Griffin was "engaged in protected speech and peaceful assembly" at the United States Capitol Building during the January 6, 2021 insurrection.  Compl. ¶ 16, ECF No. 1.  Plaintiff alleges he did not see any signs suggesting he was not allowed to be at the Capitol nor was he instructed by any officer to leave.  *Id.*  During a "friendly conversation" with one or more police officers, other officers "suddenly picked up the bicycle barricades and rushed toward Griffin and the crowd, using the barricades as a weapon and spraying Griffin in the face with a stinging pepper gel."  *Id.* ¶ 18.  Plaintiff claims he tried to calm the "trigger-happy" officers who "seemed" not trained to deal with crowd control.  *Id.* ¶ 19.

According to Plaintiff, he helped reconnect the police line barricades and yelled at other "protestors" who continued to pull the barricades apart.  *Id.* ¶¶ 20–21.  Then an unidentified projectile struck Plaintiff in the leg, causing him to fall to the ground.  *Id.* ¶ 22.  Plaintiff believes this projectile was a 38mm or 40mm shelf or canister deployed by an MPD member behind the

police line.  *Id.*  Plaintiff got up with the aid of his cane and "hobbled away" to a bus that took him back home to Pennsylvania.  *Id.* ¶¶ 23–24.  Plaintiff alleges that when he went to the hospital, he was released and then had surgery three days later to place a lithium metal plate in his leg to fix his broken femur.  *Id.* ¶ 25.

On January 5, 2024, Plaintiff sued Defendants.  Compl.  Plaintiff failed to provide pre-suit notice under D.C. Code § 12–309.  *See* Def.'s Statement of Undisputed Material Facts (SUMF) ¶¶ 1–2.

## LEGAL STANDARDS

### I.   <u>Fed. R. Civ. P. 12(b)(6)</u>

Fed. R. Civ. P 12(b)(6) permits a party to move to dismiss a complaint that fails to state a claim upon which relief can be granted.  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although a complaint need not provide "detailed factual allegations" to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief."  *Twombly*, 550 U.S. at 555.  A complaint alleging facts "'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (brackets omitted).

3

II.    <u>**Fed. R. Civ. P. 56**</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "[s]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once a movant has made this initial showing, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  A party may move "for summary judgment at any time" including at the beginning of a case before discovery has commenced.  Fed. R. Civ. P. 56(c); *see also Parker v. Hoglander*, No. CV 15-926 (JDB), 2016 WL 3527014, at *3 (D.D.C. June 23, 2016).

**ARGUMENT**

I.    <u>**The Court Should Dismiss Chief Smith As A Defendant.**</u>

The lone allegation against Chief Smith is that she "is the supervisor and superior of the police officers of the Metropolitan Police Department . . . who physically assaulted Plaintiff."  Compl. ¶ 7.  Plaintiff contends Chief Smith and MPD "have a duty to train [MPD] officers in properly handling and controlling large crowds in a safe manner but failed to do so, resulting in [Plaintiff's injuries.]"  *Id.*  And that Chief Smith "failed to properly appoint, supervise, train" MPD members.  *Id.* ¶ 30.  Plaintiff does not specify whether he is suing Chief Smith in her official or individual capacity, but either way, the Court should dismiss all claims against her.

First, the allegations against Chief Smith fail to state a claim for supervisor liability under § 1983.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution [or federal law]."  *Iqbal*, 556 U.S. at 676.  Plaintiff fails to do so here.  Indeed, Chief Smith was not Chief of the Metropolitan Police Department on January 6, 2021—this fact alone defeats the supervisory claims against her.  *See* 70 D.C. Reg. 15047 (Nov. 17, 2023) (The D.C. Council confirmed the appointment of Chief Smith on November 7, 2023);[1] *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (J. Roberts) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)) (To be liable as a supervisor under § 1983 in an individual capacity, a "supervisor must know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").  And the Complaint lacks any allegations about Chief Smith's conduct on January 6, 2021.  Thus, Plaintiff has failed to state a claim against her in her individual capacity.

Second, if Plaintiff also intended to name Chief Smith in her official capacity, the Court should dismiss these claims as duplicative of the claims against the District.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no . . . need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly for damages and injunctive or declaratory relief.").  "A section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself."  *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996)).  Because Plaintiff

---

[1]     The Court may take judicial notice of Chief Smith's appointment.  *See Citizens for Resp. and Ethics in Washington v. Trump*, 924 F.3d 602, 607 (D.C. Cir. 2019) (public records can be judicially noticed); D.C. Code § 2-504(b) ("All courts within the District shall take judicial notice of rules, regulations, and Council acts and resolutions published . . . in the District of Columbia Register . . .").

has also named the District as a defendant, the Court should dismiss any official capacity claims against Chief Smith.  *See, e.g.*, *Harris v. Bowser*, 404 F. Supp. 3d 190, 195–96 (D.D.C. 2019) (dismissing claims against Chief of Police as duplicative of claims against the District).

**II.    The Court Should Dismiss Plaintiff's 42 U.S.C. § 1983 Claims Against the District.**

Plaintiff alleges that his First, Fourth, Fifth, and Fourteenth Amendment rights were violated when MPD officers used excessive force against him while he was "peacefully assembled."  Compl. ¶¶ 1, 32–72.  Plaintiff contends that the District's failure to train its officers caused these violations.  *Id.* ¶¶ 7, 19, 30, 32–72.  But the District, like all municipalities, is not liable for constitutional violations unless the plaintiff can establish liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 694 (1978).  Liability under *Monell* is severely limited: A showing of common law respondeat superior liability is not enough; rather, to state a *Monell* claim under 42 U.S.C. § 1983, a plaintiff must allege *both* a predicate constitutional violation *and* that a custom or policy of the District was the "moving force behind the constitutional violation."  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

A "custom or policy" may be established under four theories:  (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "[t]he action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations."  *Id*.  Failure to plead facts establishing any one of the four is grounds for dismissal under Rule 12(b)(6).  *See Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir.

2015); *accord Hodges v. District of Columbia*, 975 F. Supp. 2d 33, 54 (D.D.C. 2013) ("The fact that [a] claim arises under section 1983 does not relieve [plaintiff] of the obligation to satisfy the criteria established in *Iqbal* and *Twombly*").  Here, Plaintiff is attempting to proceed on a deliberate indifference/failure to train theory but, as explained below, falls short.  And Plaintiff otherwise fails to state a predicate violation of his Fifth or Fourteenth Amendment rights.

### A.   Plaintiff's Complaint Fails to Adequately Plead Deliberate Indifference Under *Monell* (Counts I–IV).

To state a § 1983 claim on a failure to train or supervise under a deliberate indifference theory—as the Complaint purports to do, Compl. ¶¶ 7, 19, 30, 63–72—a plaintiff must allege facts showing that "the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that policymakers can be said to have been deliberately indifferent to the need."  *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. at 388–89)).  But "deliberate indifference" under *Monell* requires considerably more than a one-off incident:  "Ordinarily" a plaintiff must show a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *see also Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015).  This is because "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  *City of Canton*, 489 U.S. at 391.  Whether a pattern of constitutional torts bears a sufficient relationship to the alleged violation to place the defendant municipality on notice hinges on whether the violations "have materially similar legal implications."  *Hurd v. District of Columbia*, 997 F.3d 332, 340 (D.C. Cir. 2021).

Plaintiff has alleged no facts that, if proven, would establish that a deficiency in the training program or supervision of MPD officers was the moving force behind any alleged

constitutional violation.  *Baker*, 326 F.3d at 1306.  To be sure, Plaintiff's Complaint says nothing

substantive about how MPD trains or supervises its officers—generally, or as to crowd control—

or how any officer training program is constitutionally inadequate.  Nor are there any allegations

of repeated, similar, egregious conduct from which a void in training or supervision could be

inferred.  *Cf. McComb v. Ross*, 202 F. Supp. 3d 11, 17-18 (D.D.C. 2016) (finding plaintiff stated

claim a failure to train or supervise claim where two officers who strip-searched plaintiff in

violation of MPD policy had at least 11 prior instances of similar misconduct in the two years

before the incident).  Instead, Plaintiff simply alleges that the police "seemed to be trigger-happy

and not trained to deal with crowd control" during the attack on the Capitol.  Compl. ¶ 19.  Other

than this, Plaintiff repeats the conclusory allegation that MPD officers are not adequately trained

or supervised.  *Id.* ¶¶ 7, 30, 71.  Such scant allegations do not create a discernable policy that

MPD has constitutionally inadequate training or supervision of its employees that would have

led to a different result for Plaintiff on January 6, 2021.  *Baker*, 326 F.3d at 1306; *see also*

*Johnson v. District of Columbia*, No. 22-cv-3167 (JEB), slip op., 2023 WL 2770392, at *6

(D.D.C. Apr. 4, 2023) (dismissing § 1983 claims against the District based on failure to train in

use of force case in which Plaintiff alleged MPD condoned excessive force and failed to train

officers).  Thus, the Court should dismiss Counts I–IV against the District.

    **B.**     <u>**Plaintiff Fails to State a Predicate Constitutional Violation of His Fifth or**</u>
<u>**Fourteenth Amendment Rights (Counts I, III, and IV).**</u>

    Along with failing to plead a basis for *Monell*, Counts I, III, and IV fail to plead a

predicate constitutional violation of Plaintiff's Fifth or Fourteenth Amendment rights.  The

Fourteenth Amendment applies only to the states, and not to the District of Columbia or its

employees.  *Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954); *see also Butera v. District of*

*Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001) ("Claims of substantive due process violations

by State officials are generally analyzed under the Due Process Clause of the Fourteenth

Amendment . . . While the District of Columbia is not a state, it is subject to the Due Process

Clause of the Fifth Amendment . . .”); *Speed v. Mills*, 919 F. Supp. 2d 122, 128 (D.D.C. 2013)

(dismissing plaintiff's § 1983 claim alleging Fourteenth Amendment violations against the

District of Columbia).  Thus, Plaintiff's Fourteenth Amendment claims in Counts I, III, and IV

fail.

 Plaintiff also invokes the Fifth Amendment in Counts I, III, and IV, but the Fifth

Amendment's due process clause is inapplicable to any claim that a law enforcement officer used

excessive force during a detention—the crux of his claims.  *Graham v. Connor*, 490 U.S. 386,

395 (1989); Compl. ¶ 34 (“right to be free from physical violence”), ¶ 52 (same), ¶ 65 (“right to

be free from excessive force”).[2]  Rather, the Fourth Amendment applies to his constitutional

claims involving excessive force.  *Graham v. Connor*, 490 U.S. at 395; Compl. ¶¶ 38–39

(bringing a Fourth Amendment excessive force claim).  Accordingly, Plaintiff may not bring the

Fifth Amendment substantive due process claim involving allegations of excessive force as

alleged in Counts I, III, or IV.  *See Goolsby v. District of Columbia*, 317 F. Supp. 3d 582, 590

(D.D.C. 2018) (claim that officers used excessive force during a detention is properly brought

under Fourth Amendment not Fifth Amendment); *Lyles v. Micenko*, 468 F. Supp. 2d 68, 72-74

(D.D.C. 2006) (constitutional claims involving illegal detention and excessive force properly

---

[2] Plaintiff also invokes his right to be “free from cruel and unusual punishment,” but
according to Plaintiff, he has never been charged or arrested for his involvement in the January 6,
2021 insurrection so the Fifth Amendment's protection to pretrial detainees do not apply to him.
*See Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 188 (D.D.C. 2009) (Eighth Amendment
prohibition on cruel and unusual punishment for convicted persons extends to pretrial detainees
through the Fifth Amendment's Due Process Clause); Compl. ¶¶ 30–31.

analyzed under Fourth not Fifth Amendment).  Thus, the Court should dismiss Count III in its

entirety and Counts I and IV to the extent that they rely on the Fifth Amendment.

III.    **The Court Should Exercise Supplemental Jurisdiction and Grant Judgment for the District on Counts X–V.**

Should the Court dismiss Plaintiff's federal claims, the Court must then decide whether to

exercise supplemental jurisdiction over the remaining common law claims against the District. [3]

*See* 28 U.S.C. § 1367.  "A district court may choose to retain jurisdiction over, or dismiss,

pendent state law claims after federal claims are dismissed."  *Shekoyan v. Sibley Int'l*, 409 F.3d

414, 423 (D.C. Cir. 2005) (citing 28 U.S.C. § 1367(c)(3)).  In deciding whether to exercise

supplemental jurisdiction, the "court must first determine whether the state and federal claims

derive from a common nucleus of operative fact."  *Konah v. District of Columbia,* 815 F. Supp.

2d 61, 78 (D.D.C. 2011) (citing *Women Prisoners of the D.C. Dep't of Corr. v. District of*

*Columbia,* 93 F.3d 910, 920 (D.C. Cir. 1996)).  If so, "the court then must decide whether to

exercise its discretion to assert jurisdiction over the state claim."  *Id.* at 78–79.  In making this

determination, the court must weigh factors of judicial economy, convenience, fairness, and

comity.  *Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260, 1265-66 (D.C.

Cir. 1995).  But if a common law claim raises a "novel or complex issue of state law," the court

may decline to exercise its supplemental jurisdiction.  *Konah,* 815 F. Supp. 2d at 79.

Plaintiff's federal and state claims derive from a common nucleus of operative facts—

namely, his allegations that MPD members used excessive force against him in responding to the

January 6, 2021 insurrection.  And as demonstrated below, Plaintiff's common law intentional

tort claims are barred by the statute of limitations, fail to state a claim, and otherwise cannot

---

[3]      Plaintiff does not bring any of his common law claim against Chief Smith.

proceed against the District because Plaintiff failed to provide mandatory pre-suit notice.  Thus,

principles of judicial economy, fairness, and convenience also weigh in favor of this Court

retaining jurisdiction to dismiss these claims.  This matter presents no novel or complex issues of

state law.  As a result, the Court should exercise supplemental jurisdiction over Plaintiff's

common law claims and grant judgment for the District.

### A.   The Court Should Grant Judgment on Counts V–X Because Plaintiff Failed to Comply with D.C. Code § 12–309.

The District is entitled to judgment on all Plaintiff's common law claims because he did

not provide pre-suit notice.  To maintain any claim against the District of Columbia for

unliquidated damages, a plaintiff must satisfy the mandatory notice requirement of D.C. Code §

12–309.  Under the statute:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, *within six months after the injury or damage was sustained*, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause and circumstances of the injury or damage.

D.C. Code § 12–309 (2015) (emphasis added).

Compliance with the notice requirement of § 12–309 is "a mandatory prerequisite to

filing a lawsuit against the District."  *Hardy v. District of Columbia*, 616 A.2d 338, 340 (D.C.

1992); *see also Brown v. District of Columbia*, 853 A.2d 733, 736 (D.C. 2004).  Because § 12–

309 is in derogation of the common law, the statute is to be strictly construed.  *Washington v.

District of Columbia*, 429 A.2d 1362, 1365 (D.C. 1981).  Thus, compliance with the statutory

notice requirement is mandatory, even where a "harsh result" may occur.  *Hill v. District of

Columbia*, 345 A.2d 867, 869 (D.C. 1975).  Here, Plaintiff did not comply with the mandatory

requirements of D.C. Code § 12–309.  *See* Def.'s Statement of Undisputed Material Facts ¶ 1;

Ex. A, Craven Decl.  As detailed in the Declaration of Lana Craven, Program Analyst for the

D.C. Office of Risk Management, Plaintiff failed to provide notice to the District within the six-

months following his alleged injuries.  Ex. A, Craven Decl.  Plaintiff therefore cannot maintain

any common law claims, including for battery, "excessive force," assault, false imprisonment,

intentional infliction of emotional distress, and negligent infliction of emotional distress against

the District.  The Court should thus grant judgment for the District on Counts V–X.

 **B.** <u>**In Any Event, Plaintiff's Common Law Claims Fail.**</u>

 Although D.C. Code § 12–309 is a complete bar to Plaintiff's common law claims against

the District, Plaintiff's common law claims also fail because they are barred by the statute of

limitations or otherwise fail to state a claim.

  **1.** **The Statute of Limitations Bars Plaintiff's Intentional Tort Claims**
   **(Counts V–IX).**

 In Counts V–IX, Plaintiff brings claims for battery, "excessive force,"[4] assault, false

imprisonment, and intentional infliction of emotional distress (IIED) respectively.  Under D.C.

Code § 12–301(4), actions for assault, battery, and false imprisonment must be brought within

the one-year statute of limitations.  IIED claims fall into the catchall three-year period for all

other actions under D.C. Code § 12–301(8), *unless* the claim is "intertwined" with and

completely based on claims which have a shorter statute of limitations, then they are subject to

that period.  *Rendall–Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997) (citing *Saunders v.

Nemati*, 580 A.2d 660, 664–65 (D.C. 1990).  For his IIED claim, Plaintiff alleges that he suffered

"emotional distress" based on the MPD members' alleged use of excessive force.  Compl. ¶¶ 81–

---

[4] Plaintiff's claim for "excessive force" under District of Columbia law is duplicative of his battery claim.  *See District of Columbia v. Chinn*, 839 A.2d 701, 707 (D.C. 2003) ("[W]here the excessive force is the product of a battery . . . the cause of action is a battery alone, with the privilege having ended at the point where excessive force began.").

82. Thus, Plaintiff's IIED claim is intertwined with, and based on, his assault and battery claims, and subject to a one-year statute of limitations. *See Tibbs v. Williams*, 263 F. Supp. 2d 39, 44 (D.D.C. 2003) (finding IIED claims intertwined with assault claims subject to one-year statute of limitations).

"Where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc). Plaintiff's claims stem from his January 6, 2021 injuries. *Id.* ¶¶ 16, 18, 22. But Plaintiff did not file his Complaint until January 5, 2024, just shy of two years too late. *See* Compl., ECF No. 1. Because Plaintiff his lawsuit after January 6, 2022, the statute of limitations bars his intentional tort claims. Thus, the Court should dismiss Counts V–IX. *See Zhi Chen v. Monk*, 701 F. Supp. 2d 32, 37 (D.D.C. 2010) (dismissing battery and IIED claims under one-year statute of limitations).

### 2.     Count VIII (False Imprisonment) Fails to State a Claim.

Count VIII appears misplaced as Plaintiff alleges that a female plaintiff was grabbed and physically restrained by *seven* John Doe Officers. *Compare* Compl. ¶¶ 16–25 (describing two uses of force against five officers) *with* Compl. ¶¶ 79–80 ("preventing her from leaving the area and escaping from physical injury, and pulling her back in"). "The gravamen of a complaint for . . . false imprisonment under District law is an unlawful detention." *Katz v. District of Columbia*, 285 A.3d 1289, 1309 (D.C. 2022). *See also Doe v. Safeway*, 88 A.3d 131, 132 (D.C. 2014) ("A successful claim of false imprisonment requires a plaintiff to establish (1) the detention or restraint of one against [her] will and (2) the unlawfulness of the detention or restraint."). Here, there is no allegation that Plaintiff Mark Griffin (as opposed to an unidentified female) was not free to leave the insurrection at any time. Indeed, that is exactly what he alleged he did, when he

"hobbled away" to board a bus home to Pennsylvania.  Compl. ¶¶ 23–24.  Because Plaintiff

failed to allege he was unlawfully restrained against his will, the Court should dismiss Count

VIII.

### 3.    Count X (Negligent Infliction of Emotional Distress) Fails to State a Claim.

Plaintiff fails to state a claim of negligent infliction of emotional distress (NIED) against

the District.  Under District of Columbia common law, the elements for an NIED claim are "(1)

the plaintiff was in the zone of physical danger, which was (2) created by the defendant's

negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused

was serious and verifiable.'"  *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 915 (D.C.

Cir. 2015) (quoting *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011)).

"Serious and verifiable" means that the distress must have manifested in an external condition or

physical symptoms.  *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C.1991).   Here,

Plaintiff merely alleges Defendants subjected him to "emotional distress."  Compl. ¶ 84.  In fact,

this is the only "factual" allegation in Count X.  *Id.*  But this allegation is not enough to proceed

on this claim—there are no allegations that Plaintiff feared for his own safety because of any

MPD member's conduct and suffered serious and verifiable distress as a result.  *See Hawkins v.

WMATA*, 311 F. Supp. 3d 94, 107-08 (D.D.C. 2018) (rejecting vague allegations that daughter

who was struck by car mirror "became very frightened and was in pain and began to cry," and

her father "was left in fear of his life and his dignity torn from him," "is unable to feel safe while

going outside and does not feel that he is being protected by the police force . . . ;" generally

fears police will attack him in the future, and that the incident "caused emotional and

psychological trauma" to both plaintiffs as insufficient); *Sibley v. St. Albans Sch.*, 134 A.3d 789,

797–98 (D.C. 2016) (allegations of emotional trauma, disappointment, and hurt found

insufficient to support a negligent infliction of emotional distress claim).  Because Plaintiff has

not pled "serious and verifiable" emotional distress, the Court should dismiss Count X.

## CONCLUSION

For these reasons, the Court should grant this motion and dismiss Plaintiff's Complaint,

and enter judgment for the District on Counts V–X.

Date:  March 28, 2024

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Alicia M. Cullen/CC*
ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division, Section III

*/s/ Katrina Seeman*
KATRINA SEEMAN [1671729]
RYAN MARTINI [888241893]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone:  (202) 724-6607; (202) 724-7322
Fax:  (202) 724-5917; (202) 741-0555
Email:  katrina.seeman@dc.gov;
ryan.martini@dc.gov

*Counsel for Defendants District of Columbia*
*and Pamela Smith*